```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT
```

CHERYL ROUSSEAU and PETER     :
ROUSSEAU,                     :
                              :
    Plaintiffs,               :
                              :
        v.                    :    Case No. 2:18-cv-205
                              :
JOHN BOYD COATES, III, M.D.,  :
and CENTRAL VERMONT MEDICAL   :
CENTER, INC.,                 :
                              :
    Defendants.               :

## OPINION AND ORDER

In 1977, Dr. John Boyd Coates agreed to artificially inseminate Cheryl Rousseau with genetic material from an unnamed medical student. Cheryl and her husband Peter now claim that, unbeknownst to them until very recently, Dr. Coates in fact used his own genetic material and is the biological father of their daughter. The Complaint against Dr. Coates and Central Vermont Medical Center, Inc. ("CVMC") asserts several causes of action, including medical negligence, fraud, and breach of contract.

Defendants have each moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. For the reasons set forth below, Dr. Coates's motion to dismiss is **denied**. CVMC's motion to dismiss is **granted**, all claims against CVMC are **dismissed without prejudice**, and the Rousseaus are granted leave to amend their Complaint.

## Factual Background

Jurisdiction in this case is based upon diversity, as Cheryl

and Peter Rousseau are citizens of Florida, Dr. Coates is a citizen of Vermont, and CVMC is located in Berlin, Vermont. For purposes of the pending motions to dismiss, the allegations in the Complaint will generally be accepted as true.

The Rousseaus were married in October 1974. Once married, they explored conceiving a child through artificial insemination. They met with Dr. Coates, who agreed to perform the insemination procedure using genetic material from an unnamed medical student. Dr. Coates informed the Rousseaus that the unnamed student resembled Peter Rousseau, met specific characteristics that Cheryl Rousseau required, and had been tested for the purpose of being a donor of genetic material. Dr. Coates also required Peter Rousseau to retain counsel and agree in a written contract to adopt any child born as a result of the procedure.

Dr. Coates allegedly performed the procedure twice on Cheryl Rousseau, both times at Central Vermont Hospital (now CVMC). Although he had pledged to use the genetic material of the aforementioned anonymous medical student, the Rousseaus claim that Dr. Coates instead used his own genetic material. As a result, Dr. Coates is allegedly the father of the Rousseaus' daughter, born December 27, 1977.

Dr. Coates continued to serve as Cheryl Rousseau's obstetrician and gynecologist for a year after the child's birth. Although he allegedly knew that he was the father, he never

disclosed that fact to the Rousseaus or their daughter.  Dr. Coates currently denies the allegation that he used his own genetic material to impregnate Cheryl Rousseau, and denies that he is the biological father of her daughter.

In October of 2018, the Rousseaus' daughter, now known as Barbara Mary Frances Gordon, used DNA testing in an effort to learn more about her biological father.  When she received the results of that testing, she allegedly learned that Dr. Coates was her genetic father.

The Complaint presents nine causes of action: medical negligence; failure to obtain informed consent; fraud; battery; negligent infliction of emotional distress; intentional infliction of emotional distress; breach of contract; violation of the Consumer Protection Act; and negligent supervision by CVMC.  CVMC is also alleged to be liable on the basis of respondeat superior.

Dr. Coates and CVMC have each moved to dismiss the Complaint.  Dr. Coates argues that this case centers on paternity and is governed by the Vermont Parentage Act.  The Vermont Parentage Act provides procedures for genetic testing, but prohibits testing of an anonymous donor.  Dr. Coates submits that the statutory prohibition prevents the Rousseaus from proving their case.  He also contends that subject matter jurisdiction is lacking under the domestic relations exception to diversity

3

jurisdiction. CVMC argues that the Complaint fails to state a plausible claim that Dr. Coates was its employee or agent, that it had no duty to supervise, and that it cannot be held liable for his actions.

The Rousseaus submit that the focus of this case is Dr. Coates's fraudulent acts, that compliance with the Vermont Parentage Act is therefore not required, and that the domestic relations exception does not apply. In response to CVMC's motion to dismiss, the Rousseaus argue that the motion cannot be granted because it relies upon facts outside the Complaint.

## Discussion

### I. Dr. Coates's Motions to Dismiss

#### A. Failure to State a Claim

Dr. Coates first moves to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept the allegations in the Complaint as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A plaintiff is not required to provide "detailed factual allegations," but must assert "more than labels and conclusions."

4

*Twombly*, 550 U.S. at 555.

Dr. Coates argues that the Complaint should be dismissed because it seeks relief that is barred by state statute. Specifically, he submits that to prevail on any of their claims the Rousseaus must first establish that he is the genetic parent of their daughter. That question, he contends, must be resolved in a parentage proceeding in state court pursuant to the Vermont Parentage Act, 15C V.S.A. §§ 101, *et seq.* ("Parentage Act" or "Act").

The Parentage Act provides that "[a] proceeding to adjudicate the parentage of a child shall be maintained in accordance with this title and with the Vermont Rules for Family Proceedings," except in circumstances that do not apply here. 15C V.S.A. § 104(a). "Original actions to adjudicate parentage may be commenced in the Family Division of the Superior Court" of the State of Vermont. *Id.* § 104©. The Act "applies for all purposes, including the rights and duties of parentage under the law." *Id.* § 203. Actions that may be joined with a parentage proceeding under the Parentage Act include "a proceeding for parental rights and responsibilities, parent-child contact, child support, child protection, termination of parental rights, divorce, annulment, legal separation, guardianship, probate or administration of an estate or other appropriate proceeding, or a challenge or rescission of acknowledgment of parentage." *Id.* §

5

110.

Section 601 of the Parentage Act states that "[g]enetic testing shall not be used to challenge the parentage of a person . . . who is a donor." *Id.* § 601. A "donor" is defined in the statute as "a person who contributes a gamete or gametes or an embryo or embryos to another person for assisted reproduction or gestation, whether or not for consideration." *Id.* § 102(8). The Act also explicitly excludes "donor" from the definition of "alleged genetic parent." *Id.* § 102(3)©. Dr. Coates submits that because of the prohibition in Section 601, the Rousseaus cannot compel him to undergo genetic testing, are thus unable to prove paternity, and the Complaint must be dismissed.

As Dr. Coates notes in his briefing, the Parentage Act and similar statutes across the country are designed in part to provide anonymity and protection to both the donor and the mother. *See, e.g., Stitham v. Henderson*, 2001 ME 52, ¶ 8, 786 A.2d 598, 601 ("The biological mother may not want the paternity of the biological father determined because she does not want him to establish a relationship with the child . . . ."). In keeping with those principles, such statutes make clear that an anonymous donor of gametes is not considered the natural father of the child. *See, e.g.,* Cal. Fam. Code § 7613(b)(1); Wis. Stat. § 891.40(2); Colo. Rev. Stat. § 19-4-106(2). The Parentage Act's bar against genetic testing to determine the identity of a donor

6

is consistent with that policy interest in preserving donor anonymity.

This case is not about parentage, parental rights, or protection of anonymity.  Accepting the facts in the Complaint as true, the case is about fraud and deception.  The Rousseaus claim that over 40 years ago, Dr. Coates lied to them and used his own genetic material to become the biological father of their child.  They are asserting a host of claims, including medical negligence, intentional infliction of emotional distress, and breach of contract.  This is not the type of case that, as contemplated in the Parentage Act, might ultimately be joined with a parental rights or child support proceeding.  *See* 15C V.S.A. § 110.  The child in this case is in her 40s, the alleged fraud was only recently discovered, and the Rousseaus are seeking damages.

As the Rousseaus properly argue, the Vermont Legislature cannot have intended the anonymity provisions in the Parentage Act to protect a doctor who allegedly committed fraud.  Indeed, while genetic testing in this case may be necessary to determine the nature of Dr. Coates's actions, it will not be undertaken to accomplish any of the goals envisioned by the Parentage Act, or to assist in the types of proceedings typically adjudicated in state family court.  The Court therefore finds that the Parentage Act, and specifically the bar on genetic testing of a donor, does

7

not apply in this case. Dr. Coates's motion to dismiss on that basis is **denied**.

B.   **Subject Matter Jurisdiction**

Dr. Coates next moves to dismiss for lack of subject matter jurisdiction, arguing that this case is barred by the domestic relations exception to diversity jurisdiction. A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see* Fed. R. Civ. P. 12(b)(1). If subject matter jurisdiction is challenged, the plaintiff has the burden of proving by a preponderance of the evidence that jurisdiction exists. *Makarova*, 201 F.3d at 113.

The Supreme Court has long held that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593-94 (1890); *see also Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). The Second Circuit has explained that the domestic relations exception "is not based on Article III of the Constitution but is instead an interpretation of the diversity statute." *Williams v. Lambert*, 46 F.3d 1275, 1283 (2d Cir. 1995). In *Ankenbrandt*, the Supreme Court acknowledged that the exception applies to "a narrow range of domestic relations issues," and affirmed "the

8

validity of the exception as it pertains to divorce and alimony decrees and child custody orders." 504 U.S. at 704.

Dr. Coates contends that the domestic relations exception applies because the Rousseaus seek to establish paternity. Some district courts in this Circuit have held that a paternity dispute does not trigger the exception. *See Tomas v. Gillespie*, 385 F. Supp. 2d 240, 243 (S.D.N.Y. 2005) ("Since the Supreme Court's limitation of the doctrine in *Ankenbrandt*, the 'domestic relations' exception has not been applied to cases involving solely a declaration of paternity."); *Westover ex rel. Gray v. Durant*, 75 F. Supp. 2d 31, 34 (N.D.N.Y. 1999) ("Paternity has never been included within the scope of the domestic relations exception, perhaps because the exception relates to issues arising within the context of marriage while paternity does not necessarily."). Even assuming, for the sake of argument, that the domestic relations exception could apply to a paternity action, the exception is not appropriate here because, as discussed above, this case has nothing to do with domestic relations.

The Rousseaus are bringing a civil damages action. They do not seek any sort of domestic or family law relief. The fundamental issue is whether, in 1977, Dr. Coates provided them the specific genetic material he promised. If he did not, he may be liable under the various causes of action alleged in the

9

Complaint. This is not a domestic relations case, and the domestic relations exception does not deprive this Court of subject matter jurisdiction.

Dr. Coates argues in the alternative that even if this case "does not fall squarely within the ambit of the domestic relations exception," the Court should abstain from asserting jurisdiction until the question of paternity has been determined in state court. ECF No. 4 at 13. His briefing discusses passage of the Parentage Act as a means of modernizing Vermont's parentage laws, with the focus of the legislation being the best interests of the child. *Id.* at 15. The relevance of that legislative history here is unclear, as the Rousseaus' daughter is over 40 years old and her best interests are not at issue.

Dr. Coates cites *Ankenbrandt* for the proposition that abstention may be appropriate "in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody," or when "difficult questions of state law bearing on policy problems of substantial public import" are at stake. 504 U.S. at 705-06. Reliance on these passages is misplaced. First, there is no "domestic relationship" in question in this case. Dr. Coates was a medical services provider to Cheryl Rousseau. Their relationship was professional, and his alleged paternity does not bring this case within the "narrow" confines identified in *Ankenbrandt* and its

10

predecessors. *Id.* at 701. Second, this case does not give rise to important state law policy concerns that would justify abstention. The facts alleged are extraordinary, and thus lack broad implications for the State of Vermont and its laws governing domestic relations. The Court therefore declines to abstain on the grounds argued by Dr. Coates, and his motion to dismiss for lack of subject matter jurisdiction is **denied.**

**II. CMVC's Motion to Dismiss for Failure to State a Claim**

CVMC has moved to dismiss the Complaint as well. Its initial arguments incorporate those submitted by Dr. Coates. The Court has denied relief to Dr. Coates, and likewise denies relief to CVMC to the extent it relies on Dr. Coates's motion.

CVMC also offers its own grounds for dismissal under Federal Rule of Civil Procedure 12(b)(6). As noted above, Rule 12(b)(6) requires a plausible claim. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are insufficient. *Id.* CVMC contends that the allegations against it are merely conclusory and fail to assert plausible claims under either respondeat superior or negligent supervision theories.

The Complaint alleges that CVMC provided services to patients through the use of attending and other physicians with

11

whom it contracted to use its facilities.  The Complaint further alleges that those physicians were agents or employees of CVMC; CVMC led patients to believe those physicians were agents or employees of CVMC; CVMC had a duty to supervise its physicians, ensuring that each physician adhered to applicable standards of care; and CVMC breached that duty.  Asserting a theory of respondeat superior, the Complaint alleges that Dr. Coates was operating in the course and scope of his job duties when he artificially inseminated Cheryl Rousseau.

CVMC submits that the Complaint should be construed as alleging that Dr. Coates had admitting privileges.  Such privileges, CVMC argues, do not make a physician an employee or agent of the admitting hospital and thus cannot serve as a basis for a respondeat superior claim.  In their opposition, the Rousseaus contend that the concept of admitting privileges is not alleged in the Complaint, and thus may not be considered at the Rule 12 stage of the case.  *See Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.").  The Court agrees that such additional facts cannot be considered at this time.

12

Nonetheless, the Complaint asserts claims that are not sufficiently supported by the factual allegations. The Complaint alleges that Dr. Coates was acting in an employment or agency relationship with the hospital, but provides no further details about that relationship. "Under the doctrine of respondeat superior, a hospital may be vicariously liable for the medical malpractice of physicians, nurses, and other healthcare professionals who act in an employment or agency relationship to the hospital." *I.M. v. United States*, 362 F. Supp. 3d 161, 198 (S.D.N.Y. 2019) (citing New York case law). "However, a hospital is generally not liable for the malpractice of a private physician who does not serve as an employee or agent of the hospital, and who independently treats a patient at a hospital as an independent private physician." *Id.* at 199 (citing New York case law). The nature of Dr. Coates's affiliation with CVMC, including possible contractual arrangements, thus carries legal significance.

The allegations in the Complaint that Dr. Coates was either an employee or agent of Central Vermont Hospital are conclusory, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998). Without sufficient factual support to assert a plausible legal claim, the allegations against CVMC are ripe for dismissal. *See Iqbal*, 556

U.S. at 678. CMVC's motion to dismiss for failure to state a claim is therefore **granted**, and the claims against it are **dismissed without prejudice**.

### III. Leave to Amend

As the claims against CVMC are being dismissed without prejudice, they may be reasserted in an amended pleading. Indeed, in the course of discovery the Rousseaus may obtain additional information about Dr. Coates's relationship with Central Vermont Hospital/CVMC, the scope of his alleged employment or agency, and any legal duties the hospital may have owed to his patients. Accordingly, the Rousseaus are **granted leave to amend** their Complaint within 60 days of this Opinion and Order. After the expiration of 60 days, leave to amend will be granted only with further leave of the Court.

### Conclusion

For the reasons set forth above, Dr. Coates's motion to dismiss (ECF No. 4) is **denied**; CVMC's motion to dismiss (ECF No. 5) is **granted**; all claims against CVMC are **dismissed without prejudice**; and the Rousseaus are **granted leave to file an amended complaint** within 60 days of this Opinion and Order.

DATED at Burlington, in the District of Vermont, this 17th day of July, 2019.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge