```
                 UNITED STATES DISTRICT COURT
                          FOR THE
                    DISTRICT OF VERMONT
```

CHERYL ROUSSEAU and PETER      :
ROUSSEAU,                       :
                                :
    Plaintiffs,            :
                                :
        v.                 :      Case No. 2:18-cv-205
                                :
JOHN BOYD COATES, III, M.D.,   :
and CENTRAL VERMONT MEDICAL    :
CENTER, INC.,                   :
                                :
    Defendants.            :

### **RULING ON MOTION TO COMPEL A RULE 35 BUCCAL SWAB**

Plaintiffs Cheryl and Peter Rousseau move the Court to compel Defendant John Boyd Coates, III, M.D. to submit to a buccal swab of the inside of his cheek for the purpose of obtaining his DNA. The Rousseaus allege that in 1977, Dr. Coates wrongfully and fraudulently inseminated Cheryl Rousseau with his own genetic material. A buccal swab, they contend, will help to establish that Dr. Coates is the biological father of their adult daughter. Dr. Coates denies paternity. For the reasons set forth below, the Rousseaus' motion is **granted.**

Under Federal Rule of Civil Procedure 35(a), a court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed examiner" upon a showing of good cause. Fed. R. Civ. P. 35(a). Accordingly, an order requiring an examination under Rule 35 may be issued only when (1) the mental or physical condition of the party is "in controversy," and (2) good cause

supports the order.  *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964).  "Controversy" and "good cause" may be established by the pleadings.  *Id.*  Granting or denying a motion for a physical examination "rests in the sound discretion of the trial court." *Coca-Cola Bottling Co. of Puerto Rico v. Negron Torres*, 255 F.2d 149, 153 (1st Cir. 1958).

A party's mental or physical condition is "in controversy" when that condition is the subject of the litigation.  *See Ashby v. Mortimer*, 329 F.R.D. 650, 653 (D. Idaho 2019).  Good cause "depends on both relevance and need."  *Pearson v. Norfolk-Southern Ry., Co., Inc.*, 178 F.R.D. 580, 582 (M.D. Ala. 1998) (citations omitted).  To determine need, "the court must examine the ability of the movant to obtain the desired information by other means."  *Ashby*, 329 F.R.D. at 653 (citations omitted).

In this case, initial DNA testing reportedly indicates that Dr. Coates is the biological father of the Rousseaus' daughter.  As this suit is predicated upon the claim that Dr. Coates did not impregnate Cheryl Rousseau as promised, his biological relationship to the Rousseaus' daughter is very much at issue.  The Rousseaus have therefore satisfied the "in controversy" requirement.  *See, e.g., Ashby*, 329 F.R.D. at 654 (concluding that the "in controversy" requirement was satisfied where "[t]he very core" of the defendant doctor's defense to a claim of

fraudulent insemination through use of "his own sperm—requires an analysis of his DNA").

The Court further finds that the Rousseaus have shown good cause for a swab test. At oral argument, the Rousseaus' counsel informed the court that initial DNA-related information was accessed by means of a service or services such as Ancestry.com or 23andMe.com. Such services may be subject to "a variety of attacks" on reliability, including questions about chain of custody, testing methods, and error rates. *Id.* at 655. Legally conclusive evidence is therefore unavailable, and as Dr. Coates denies paternity, there is good cause for further testing. *See D'Angelo v. Potter*, 224 F.R.D. 300, 304 (D. Mass. 2004) (finding good cause to order a DNA examination where plaintiff lacked alternative methods for proving her allegations).

Dr. Coates contends that the law concerning DNA testing in the civil context is undeveloped, and that the Court should not allow such testing under Rule 35. As the Rousseaus' point out, however, Rule 35 has long been used as a vehicle for scientific testing relevant to the question of paternity. *See, e.g., Beach v. Beach*, 114 F.2d 479, 482 (D.C. Cir. 1940). Dr. Coates also submits that such testing should be conducted under the Vermont Parentage Act and overseen by a state court. The Vermont Parentage Act codifies a series of protections for genetic testing, including requirements for accreditation (15C V.S.A. §

602), the manner in which the test results are reported (15C V.S.A. § 605), the means of establishing admissibility (15C V.S.A. § 606), the process by which test results may be contested (15C V.S.A. § 607), and provisions for confidentiality (15C V.S.A. § 614). Such protections may be incorporated into this Court's order for testing. The Court therefore **orders** as follows:

    (1) The Rousseaus' motion to compel a buccal swab (ECF No. 25) is **granted**;

    (2) counsel for the Rousseaus shall prepare a proposed order that includes safeguards such as those provided in the Vermont Parentage Act, as well as the date, place, manner, conditions, and scope of the examination, including the person or persons who will perform it; provide the proposed order to Dr. Coates's counsel for comments and consent; and submit a stipulated proposed order to the Court within 14 days of this Order;

    (3) in the event the parties are unable to agree on a stipulated proposed order, they shall each submit proposed orders to the Court within 21 days of this Order.

    DATED at Burlington, in the District of Vermont, this 17th day of July, 2019.

                                   <u>/s/ William K. Sessions III</u>
                                   William K. Sessions III
                                   District Court Judge