```
                  UNITED STATES DISTRICT COURT
                            FOR THE
                      DISTRICT OF VERMONT
```

CHERYL ROUSSEAU and PETER      :
ROUSSEAU,                      :
                               :
     Plaintiffs,               :
                               :
          v.                   :     Case No. 2:18-cv-205
                               :
JOHN BOYD COATES, III, M.D.,   :
and CENTRAL VERMONT MEDICAL    :
CENTER, INC.,                  :
                               :
     Defendants.               :

## OPINION AND ORDER

In 1977, Defendant John Boyd Coates, M.D. agreed to artificially inseminate Plaintiff Cheryl Rousseau with genetic material from an unnamed medical student.  In 2018, Cheryl and her husband, Plaintiff Peter Rousseau, allegedly discovered that the biological father of their now-grown daughter is, in fact, Dr. Coates.  The Complaint brings several causes of action, including medical malpractice, breach of contract, fraud, battery, and a claim under the Vermont Consumer Protection Act ("VCPA").

Dr. Coates now moves for summary judgment on the VCPA claim, arguing that under the version of the VCPA in place in 1977 Plaintiffs' claims fail as a matter of law.  Plaintiffs oppose the motion, arguing that the Court must apply the version of the VCPA in effect in 2018 when their claim accrued, and that Dr. Coates is not entitled to summary judgment.  For the reasons set forth below, the motion for partial summary judgment is granted.

## Factual Background[1]

Peter and Cheryl Rousseau married in October 1974. Prior to their marriage, Peter had obtained a vasectomy. He later explored whether the vasectomy could be reversed and learned that it could not. Consequently, Cheryl Rousseau asked her gynecologist, Dr. Coates, about artificial insemination services. Dr. Coates allegedly responded, "we do that." Dr. Coates asserts in his statement of facts that he did not advertise either as an infertility specialist or that he was able to perform artificial inseminations.

In order to perform the artificial insemination, Dr. Coates required a letter from an attorney stating that Peter Rousseau would raise any child born from the procedure as his own. Peter obtained the required letter and Cheryl delivered it to Dr. Coates. Peter then accompanied Cheryl when she received a test to ensure her fertility, but waited in a separate room during the testing.

Before the insemination procedure, Cheryl and Dr. Coates discussed the physical attributes of the donor whose genetic material would be used. Cheryl explained to Dr. Coates that she

---

[1] As required by the Local Rules and the Federal Rules of Civil Procedure, the parties have submitted statements of fact. Dr. Coates labels his statement as one of "undisputed" facts, and the Rousseaus have not disputed his factual assertions. The Rousseaus, in turn, have submitted a statement of "disputed facts," though their assertions are, for the limited purpose of summary judgment, largely uncontested.

and Peter were seeking a donor who physically resembled her husband.  Dr. Coates subsequently informed Cheryl that he had found a donor who met the description of Peter.  In addition to resembling Peter, the donor was to be a medical student with above-average intelligence.  After informing Peter that a donor had been found, Cheryl agreed to go ahead with the procedure.  She and Peter have testified that they would not have authorized the procedure if they had known that Dr. Coates would be the donor.

The Rousseaus paid $75 cash from their joint bank account to Dr. Coates for the artificial insemination.  After the second attempt, Cheryl Rousseau became pregnant.  She gave birth to her daughter, Barbara, on December 27, 1977.

In October 2018, the Rousseaus reportedly learned for the first time that Dr. Coates is Barbara's biological father. Cheryl Rousseau claims that as a result of this discovery she has suffered a loss of trust, lost sleep, and has stopped participating in her normal activities.  Peter Rousseau has allegedly suffered from anxiety.

## Discussion

### I.   Summary Judgment Standard

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  Disputes concerning material facts are genuine where the

evidence is such that a reasonable jury could return a verdict

for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  In deciding whether genuine issues of

material fact exist, the court construes all facts in a light

most favorable to the non-moving party and draws all reasonable

inferences in the non-moving party's favor.  *See Jeffreys v. City

of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  However, the

non-moving party "may not rely on conclusory allegations or

unsubstantiated speculation."  *F.D.I.C. v. Great Am. Ins. Co.*,

607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## II.  Liability Under the VCPA

Dr. Coates submits that a threshold issue is whether to

apply the version of the VCPA in place in 1977, when he

artificially inseminated Cheryl Rousseau, or the version in

effect in 2018 when the Rousseaus discovered the conduct they now

allege.  The Court need not address that question, since the

statute has always required that the allegedly-unfair or

deceptive act took place "in commerce."  9 V.S.A. § 2453 ("Unfair

methods of competition in commerce and unfair or deceptive acts

or practices in commerce are hereby declared unlawful.").  The

further Court finds that, given the Vermont Supreme Court's

interpretation of "in commerce" in the context of the VCPA, the

conduct alleged in this case did not violate the statute.

The Vermont Supreme Court has explained that

> the "in commerce" requirement narrows the [VCPA's]
> application to prohibit only unfair or deceptive acts
> or practices that occur in the consumer marketplace.
> To be considered "in commerce," the transaction must
> take place "in the context of [an] ongoing business in
> which the defendant holds himself out to the public."
> *Zeeman* [*v. Black*], 273 S.E.2d [910,] 915 [(Ga. Ct. App.
> 1980)].  Further, the practice must have a potential
> harmful effect on the consuming public, and thus
> constitute a breach of a duty owed to consumers in
> general.  *Id.*  By contrast, transactions resulting not
> from "the conduct of any trade or business" but rather
> from "private negotiations between two individual
> parties who have countervailing rights and liabilities
> established under common law principles of contract,
> tort and property law" remain beyond the purview of the
> statute.  *Id.* (quotation omitted).

*Foti Fuels, Inc. v. Kurrle Corp.*, 2013 VT 111, ¶ 21 (2013).

Viewing the facts in the light most favorable to the
Rousseaus, Dr. Coates engaged in deceptive acts or practices.
The Court will assume, strictly for the purpose of this analysis,
that the Rousseaus were consumers of his services as defined by
the statute.  Dr. Coates acted in the course of an ongoing
business, his medical practice, in which he held himself out to
the public as a doctor, and his actions allegedly had a harmful
effect on two members of the consuming public.

The issue becomes more complicated when considering whether
Dr. Coates breached "a duty owed to consumers in general."  *Id.*
According to the parties' statements of fact, Dr. Coates spoke in
private with Cheryl Rousseau.  While he and Cheryl discussed

artificial insemination, he did not advertise insemination
services generally.  And although he may have offered such
services to other patients, there is no evidence of fraud with
those patients, or that, even assuming similar fraudulent
conduct, the conduct occurred outside of "private negotiations."
*Id.*  Because the alleged deception in this case took place purely
in the context of a private conversation between two individuals,
and absent any evidence of unlawful conduct in "the consumer
marketplace," the Rousseaus' claims are "beyond the purview of
the statute."  *Id.*

Courts in other jurisdictions have followed the *Foti Fuels*
approach, essentially limiting statutory consumer fraud claims to
the business, rather than the personal/patient, aspects of a
medical practice.  *See, e.g., Haynes v. Yale–New Haven Hospital*,
699 A.2d 964, 972 (Conn. 1997) (holding that "only the
entrepreneurial or commercial aspects of the [health care]
profession are covered"); *Simmons v. Stephenson*, 84 S.W.3d 926,
928 (Ky. App. 2002) (affirming summary judgment to doctor on
consumer protection claim because the "allegations in the
complaint did not relate to the entrepreneurial, commercial, or
business aspect of Dr. Stephenson's practice of medicine.");
*Nelson v. Ho*, 564 N.W.2d 482, 486 (Mich. App. 1997) ("Only when
physicians are engaging in the entrepreneurial, commercial, or
business aspect of the practice of medicine are they engaged in

'trade or commerce' within the purview of the [Michigan Consumer Protection Act]."). For example, the New York Court of Appeals upheld a consumer's claim relating to an *in vitro* fertilization procedure where the defendants were alleged to have engaged in "multi-media dissemination of information to the public." *Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 667 (N.Y. 1999).

There is no allegation in this case that Dr. Coates publicly disseminated false or fraudulent information in breach of his duty to "consumers in general." *Foti Fuels*, 2013 VT 111, ¶ 21. The Rousseaus claim that it was Cheryl who inquired about artificial insemination, and that Dr. Coates' misconduct followed that purely-private conversation. The Court therefore finds that Dr. Coates did not commit consumer fraud "in commerce," and that the Rousseaus' VCPA claim fails as a matter of law.

### Conclusion

For the reasons set forth above, Dr. Coates' motion for partial summary judgment as to Plaintiffs' VCPA claim (ECF No. 93) is granted.

DATED at Burlington, in the District of Vermont, this 18th day of September, 2020.

> /s/ William K. Sessions III
> William K. Sessions III
> U.S. District Court Judge