```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                        DISTRICT OF VERMONT

CHERYL ROUSSEAU and PETER       :
ROUSSEAU,                       :
                                :
     Plaintiffs,                :
                                :
          v.                    :   Case No. 2:18-cv-205
                                :
JOHN BOYD COATES, III, M.D.,    :
and CENTRAL VERMONT MEDICAL     :
CENTER, INC.,                   :
                                :
     Defendants.                :
```

## OPINION AND ORDER

In 1977, Defendant John Boyd Coates, M.D. agreed to artificially inseminate Plaintiff Cheryl Rousseau with genetic material from an unnamed medical student. In 2018, Cheryl and her husband, Plaintiff Peter Rousseau, allegedly discovered that the biological father of their now-grown daughter is, in fact, Dr. Coates. The Complaint brings several causes of action, including medical malpractice, breach of contract, fraud, battery, and a claim under the Vermont Consumer Protection Act ("VCPA").[1]  Dr. Coates now moves for summary judgment on the Rousseaus' battery, breach of contract, and fraud claims. For the reasons set forth below, the motion for summary judgment is denied.

---

[1] In a separate Opinion and Order, the Court has dismissed the Rousseaus' VCPA claim. Peter Rousseau has withdrawn his claims of medical negligence and failure to obtain informed consent, and the Rousseaus have dismissed their claims of negligent and intentional infliction of emotional distress.

**Factual Background**

Peter and Cheryl Rousseau married in October 1974.  Prior to their marriage, Peter obtained a vasectomy.  He later explored whether the vasectomy could be reversed and learned that it could not.  Consequently, Cheryl Rousseau asked her gynecologist, Dr. Coates, about artificial insemination services.  Dr. Coates allegedly responded, "we do that."  As a condition, however, Dr. Coates required a letter from an attorney stating that Peter Rousseau would raise any child born from the procedure as his own.  Peter obtained the required letter and Cheryl delivered it to Dr. Coates.

Before the insemination procedure, Cheryl and Dr. Coates discussed the physical attributes of the donor whose genetic material would be used.  Cheryl explained to Dr. Coates that she and Peter were seeking a donor who physically resembled her husband.  Dr. Coates subsequently informed Cheryl that he had found a donor who met the description of Peter.  In addition to resembling Peter, the donor was to be a medical student with above-average intelligence.

After informing Peter that a donor had been found, Cheryl agreed to go ahead with the procedure.  She has since testified that she would not have gone forward with the procedure if she had known that Dr. Coates would be the donor.  Peter has similarly attested that he would not have gone through with the

procedure or agreed to pay for it if he had known that Dr. Coates would be the donor.

The Rousseaus paid $75 cash from their joint bank account to Dr. Coates for the artificial insemination. After the second attempt, Cheryl Rousseau became pregnant. She gave birth to her daughter, Barbara, on December 27, 1977.

In October 2018, the Rousseaus reportedly learned for the first time that Dr. Coates is Barbara's biological father. Cheryl Rousseau claims that as a result of this discovery she has suffered a loss of trust, lost sleep, and has stopped participating in her normal activities. Peter Rousseau has allegedly suffered from anxiety.

## Discussion

### I. Summary Judgment Standard

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable

inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## II. Battery

Dr. Coates argues that Cheryl Rousseau cannot assert a cause of action for battery because she consented to the insemination procedure. Cheryl counters that by using his own sperm, Dr. Coates changed the nature of the procedure such that any consent she gave was inapplicable and irrelevant. Both parties claim support from Vermont case law.

Dr. Coates cites *Christman v. Davis*, 2005 VT 119, which involved a periodontal procedure. The patient in *Christman* provided consent for a tissue graft, but once the local anesthetic was applied the periodontist decided to instead perform a flap procedure. When the flap procedure did not achieve the desired result, plaintiff sued for battery. *Christman* identified the "central issue" as "whether plaintiff consented to the procedure that was performed so that he cannot prove an essential element of battery." 2005 VT 119, ¶ 16.

> Effective consent must be "to the particular conduct, or to substantially the same conduct." Restatement § 892A(2)(b). Consequently, "[w]here a doctor obtains consent of the patient to perform one type of treatment and subsequently performs a substantially different treatment for which consent was not obtained, there is

4

> a clear case of battery." *Cobbs [v. Grant]*, 104 Cal. Rptr. 505, 502 P.2d [1,] 7 [1972]; *see Perin v. Hayne*, 210 N.W.2d 609, 618 (Iowa 1973) (accepting *Cobbs* analysis and noting that battery occurs when there is a "substantial difference" between the surgery for which plaintiff granted consent and that performed).

*Id.*

The undisputed facts in *Christman* established that a flap procedure was less invasive than the graft that had been discussed with the plaintiff, and that the steps involved in a flap procedure needed to be performed in any event in order to determine whether there was sufficient tissue for a graft. *Id.*, ¶ 14. Accordingly, the Vermont Supreme Court found that "this is a case in which the medical professional did a less-extensive operation than that to which the patient consented, taking steps the professional would have taken in the more extensive operation." *Id.*, ¶ 17. Not surprisingly, the court concluded that "defendant acted within plaintiff's consent such that plaintiff has no battery claim." *Id.*, ¶ 18.

Relevant to this case, the question raised by *Christman* is whether Cheryl alleges a procedure that was "substantially different" from the one that was disclosed. Dr. Coates represented that he would perform a specific insemination, and then proceeded to perform an entirely different insemination. There was no mid-procedure change of course and, aside from the mechanics of the insemination procedure, nothing that he did overlapped with the scope of Cheryl's consent. The Court finds

5

that, viewing the facts and making all reasonable inferences in Cheryl's favor, a reasonable jury could conclude that by inseminating her with his own genetic material, Dr. Coates engaged in conduct that was "substantially different" from that which he had promised.[2]

Cheryl claims support from *O'Brien v. Synnott*, 2013 VT 33, ¶ 14, in which a nurse failed to inform the plaintiff that she was drawing blood for non-medical (law enforcement) purposes. Plaintiff, who had consented only to medical care generally, sued for battery. The Vermont Supreme Court held in favor of the plaintiff, finding that his failure to object to the blood draw did not amount to apparent consent. In doing so, the court cited the Restatement (Second) of Torts § 892B(2) (1979) for the proposition that "consent is not valid if induced by 'substantial mistake concerning the nature of the invasion.'" *O'Brien*, 2013 VT 33, ¶ 14. The court also distinguished *Christman*.

> In *Christman*, we recognized that consent to a specific procedure may encompass different but substantially the same (or less invasive) procedures. 2005 VT 119, ¶ 17, 179 Vt. 99, 889 A.2d 746. This is not a scope-of-consent case. The only undisputed consent apparent here is plaintiff's consent to medical treatment generally. Plaintiff's broad consent to

---

[2] With respect to the nature of the procedure, the Court proposes the following analogy. Suppose a defendant obtains consent to hit the plaintiff with a feather. The defendant instead hits the plaintiff with a sharp sword, inflicting serious damage. The mechanics of the act of hitting are the same, but the act itself is substantially different from that to which the plaintiff consented.

> medical treatment is different in kind from any purported consent to a blood draw for nonmedical, law-enforcement purposes.

*Id.*, ¶ 16.

While not entirely on all fours with this case, *O'Brien* is instructive. *O'Brien* made clear that broad consent to medical care is insufficient, particularly when the procedure is for a non-medical purpose. Although the consent in this case was narrower, *O'Brien* supports Cheryl's contention that where the "nature of the invasion" is not made clear, the patient's consent "is not valid" and her battery claim survives. *Id.*, ¶ 14. Viewing the facts of this case in the non-movant's favor, Cheryl gave consent to a particular insemination, but was deceived and received a very different insemination. The motion for summary judgment with respect to her battery claim is denied.

### III. Breach of Contract

Dr. Coates contends that the Rousseaus' breach of contract claims fail because the damages they assert are not recoverable in a contract action. As noted above, both Plaintiffs claim to have suffered from anxiety, while Cheryl Rousseau has also suffered loss of trust and lost sleep. Dr. Coates argues that damages for emotional harm are not available in an action for breach of contract, and that the Rousseaus' contract claims must therefore be dismissed.

The Vermont Supreme Court has noted generally that breach of

7

contract damages can go beyond "the loss of the bargain resulting from the breach."  *Lemnah v. Am. Breeders Serv., Inc.*, 144 Vt. 568, 580 (1984).  Furthermore, "[f]ailure to prove damages is fatal not to an action for breach of contract, as it would be for most tort actions, but rather to recovery on the basis of those damages."  *Foti Fuels, Inc. v. Kurrle Corp.*, 2013 VT 111, ¶ 34 n.4.  Accordingly, even without recoverable damages, the Rousseaus' contract claims survive as a matter of law.  The Vermont Supreme Court has also confirmed that when monetary damages resulting from the breach cannot be recovered, a plaintiff may still claim nominal damages.  *Herrera v. Union No. 39 Sch. Dist.*, 2006 VT 83, ¶ 21 (citing Restatement (Second) of Contracts § 346 (1981)).

With respect to the availability of damages for emotional harm, this Court recognized in *Price v. Delta Airlines, Inc.*, 5 F. Supp. 2d 226, 238 (D. Vt. 1998) that "[a]lthough recovery for emotional disturbance is ordinarily not allowed, an exception may be made if the nature of the breach is particularly likely to cause serious emotional disturbance."  *Price* cited the Restatement (Second) of Contracts § 353 (1981) for the proposition that emotional damages are recoverable when "the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.  Common examples are contracts of carriers and innkeepers with passengers and

guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death."

Dr. Coates discourages the Court from moving beyond these "common examples." The Vermont Supreme Court, however, has noted a trend in modern case law toward allowing emotional harm damages in a variety of both negligence and contract cases. *See Vincent v. DeVries*, 2013 VT 34, ¶ 19 (citing *Nome Commercial Co. v. Nat'l Bank of Alaska,* 948 P.2d 443, 453 (Alaska 1997) (contractual relationship can be basis for emotional damages where contracts are "highly personal and laden with emotion such as contracts to marry, to conduct a funeral, to sell a sealed casket, to conduct a cesarean birth, [or] to surgically rebuild a nose" (quotation omitted)); *Larsen v. Banner Health Sys.*, 81 P.3d 196, 202-06 (Wyo. 2003) (mother could recover for emotional harm resulting from hospital switching babies, which went undiscovered for forty-three years)). These more recent cases commonly arise from relationships that "involve an abuse of power or a position of actual or apparent authority." *Id.* (quoting Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 47 Reporter's Notes, cmt. d (Tentative Draft No. 5, 2007)).

Here, Dr. Coates was clearly in a position of power, which he allegedly abused when inseminating Cheryl Rousseau. A reasonable jury could also find that, in abusing his position of

power, Dr. Coates committed a breach that was likely to cause emotional harm. The Court therefore declines to grant summary judgment solely on the basis of the Rousseaus' claim for emotional harm.

To bolster their claim to recoverable damages, the Rousseaus submit that they are seeking both nominal damages and recovery of the $75 payment made to Dr. Coates for the procedure. Given these additional damage claims, the availability of emotional damages in certain narrow circumstances, and the Vermont Supreme Court's holdings regarding the viability of a contract claim even in the absence of damages, Dr. Coates' motion for summary judgment on the Rousseaus' breach of contract claims is denied.

**IV. Fraud**

As with the contract claim, Dr. Coates argues that he is entitled to summary judgment on the Rousseaus' fraud claim because the damages they assert are not recoverable as a matter of law. The Rousseaus concede that the Vermont Supreme Court has not addressed whether a party may recover for emotional harm resulting from fraud. In 1969, the Vermont Supreme Court wrote that "recovery is restricted in all cases to such damages as were the natural and proximate consequences, or the direct consequences, of the fraud, and to such damages as can be clearly defined and ascertained." *Larochelle v. Komery*, 128 Vt. 262, 268 (1969). The court confirmed this same principle in 2007. *Smith*

*v. Country Vill. Int'l, Inc.*, 2007 VT 132, ¶ 8 (citation omitted). The Vermont Supreme Court has also long held that "in actions for intentional wrongs, . . . damages are recoverable for mental suffering consisting in a sense of insult, indignity, humiliation or injury to the feelings." *Rogers v. Bigelow*, 90 Vt. 41, 46 (1916).

The Court does not need to resolve the question of recovery for emotional harm at this time. Viewing the facts in the Rousseaus' favor, there is little doubt that the alleged fraud by Dr. Coates caused them each harm. Thus, that element of the fraud claim is satisfied. *See, e.g., Burr v. Bd. of Cty. Comm'rs of Stark Cty.*, 491 N.E.2d 1101, 1106, 1108 (Ohio 1986) (concluding that adoption agency's deceit about child's health and intelligence resulted in harm, including emotional harm, to adopting parents thereby satisfying that element of a fraud claim).

As to compensation for that harm, the Rousseaus seek both compensatory and punitive damages. While Dr. Coates contests the availability of compensatory damages, Vermont law plainly allows punitive damages in the context of a fraud claim. *See, e.g., DeYoung v. Ruggiero*, 2009 VT 9, ¶ 22 (default judgment on fraud claim "served as a basis" for punitive damages award); *Proctor Trust Co. v. Upper Valley Press Inc.*, 137 Vt. 346, 354 (1979) ("if a jury finds that actual fraud was committed, an injured

party is entitled to have the jury consider punitive or exemplary damages"); *Nye v. Merriam*, 35 Vt. 438, 446 (1862) (stating "that wilful fraud, as well as malice, may be punished by exemplary damages in an action of tort"). Accordingly, the Court will not grant summary judgment on Dr. Coates' fraud claim for lack of either harm or compensable damages.[3]

## Conclusion

For the reasons set forth above, the motion for summary judgment on the Rousseaus' battery, breach of contract, and fraud claims (ECF No. 115) is denied.

DATED at Burlington, in the District of Vermont, this 18th day of September, 2020.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge

---

[3] In his reply memorandum, Dr. Coates contests the basis for the Rousseaus' punitive damages claim, arguing that they have failed to establish malice. The Rousseaus have not responded to that argument, as it was raised for the first time in a reply. Because Dr. Coates did not initially move for summary judgment on the issue of punitive damages, the Court will not address the question of malice at this time.