UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

CHERYL ROUSSEAU,                        :
                                        :
        Plaintiff,                      :
                                        :
            v.                          :    Case No. 2:18-cv-205
                                        :
JOHN BOYD COATES III, M.D.,             :
                                        :
        Defendant.                      :

<u>**ORDER**</u>

In December 2018, Plaintiff Cheryl Rousseau and her husband
Peter Rousseau filed a complaint against John Boyd Coates III,
M.D. In that complaint, Ms. Rousseau alleged that Dr. Coates
used his own semen in an artificial insemination procedure
without her consent. Mr. and Ms. Rousseau claim that they hired
Dr. Coates to perform the artificial insemination procedure with
the genetic material of an anonymous donor. The Rousseaus
asserted claims for failure to obtain informed consent, medical
battery, fraud, and breach of contract. After a three-day trial,
Defendant moved for judgment on all claims. The Court dismissed
all of Peter Rousseau's claims and denied judgment on the
remaining claims. The jury returned a verdict for Ms. Rousseau,
awarding $250,000 in compensatory damages and $5,000,000 in
punitive damages.

Now before the Court is Defendant's motion for a new trial or remittitur of the damages award. For the reasons set forth below, the motion is granted in part and denied in part.

### Factual Background

Factual knowledge of the case and its procedural history is assumed. The Court briefly summarizes the relevant facts.

In 1977, Defendant John Boyd Coates III, M.D. agreed to artificially inseminate Plaintiff Cheryl Rousseau with genetic material from an unnamed medical student. The central allegation in this case is that Dr. Coates artificially inseminated and impregnated Ms. Rousseau without informing her that he was using his own genetic material. The Complaint further alleged that Dr. Coates actively mislead Plaintiffs about the source of that genetic material.

In 2018, Ms. Rousseau and her husband, Mr. Rousseau, reportedly discovered that the biological father of their now-grown daughter is Dr. Coates. Plaintiffs subsequently filed this suit against Dr. Coates bringing several causes of action, including medical malpractice, breach of contract, fraud, and battery.

At trial, Shirley Brown, another patient on whom Dr. Coates performed artificial insemination, testified. At the time of insemination, Ms. Brown was married to JM and subsequently gave birth to MM. Ms. Brown testified that Dr. Coates used his own

genetic material during her artificial insemination procedure without her consent. As a result, MM is allegedly the biological half-sister of the Rousseaus' daughter.

After a three-day trial, the jury found for Ms. Rousseau, awarding $250,000 in compensatory damages and $5,000,000 in punitive damages. Defendant now argues that the compensatory damages award is excessive given the evidence presented at trial. Additionally, Defendant argues that Plaintiff has not demonstrated that he acted with malice, as required by Vermont law to receive punitive damages, and that the punitive damages award is grossly excessive and violated Defendant's due process rights. Finally, Defendant asserts that the Court erred in its punitive damages instruction.

## Discussion

### I.   Motion for New Trial

A new trial may be granted "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ P. 59(a)(1)(A). Under Rule 59(a), the inquiry into whether a new trial should be granted is a question that is "committed to the sound discretion of the district court." *Sequa Corp.* v. *GBJ, Corp.*, 156 F.3d 136, 143 (2d Cir. 1998). "A motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a

miscarriage of justice." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) (internal quotation marks and alterations omitted) (quoting *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992)). In making this determination, the trial court "need not view [the evidence] in the light most favorable to the verdict winner." *United States v. Landau*, 155 F.3d 93, 104 (2d. Cir 1998) (internal quotation marks omitted). However, the trial court "must exercise [its] ability to weigh credibility with caution and great restraint," and may not "freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012) (internal quotation marks omitted). "[T]he court should only grant such a motion when the jury's verdict is 'egregious.'" *DLC Mgmt. Corp.*, 163 F.3d at 134. Furthermore, it is "well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ." *Sequa Corp.*, 156 F.3d at 144.

Defendant raises several issues that allegedly necessitate a new trial. First, Dr. Coates argues that the jury should not have been instructed on punitive damages because his conduct did not demonstrate bad motive or intent. Alternatively, Defendant

argues that the Court erred in its instruction on punitive damages by allowing the jury to consider Ms. Brown's testimony in the calculation of punitive damages. Defendant also argues that the punitive damages award is grossly excessive. Finally, Defendant argues that the compensatory damages award is excessive and not supported by the evidence. For the foregoing reasons, Defendant's arguments are not sufficient to warrant a new trial.

### A. Whether the Evidence Warranted an Instruction on Punitive Damages

When a federal court sits in diversity jurisdiction, state law governs punitive damages claims. *See Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989). The Vermont Supreme Court's jurisprudence on punitive damages, by its own concession, "has not been a model of clarity." *Fly Fish Vermont Inc. v. Chapin Hill Estates*, 996 A.2d 1167, 1173 (Vt. 2010). In order to prevail on a claim for punitive damages, a plaintiff must demonstrate two elements: "(1) wrongful conduct that is outrageously reprehensible; and (2) malice." *Carpentier v. Tuthill*, 86 A.3d 1006, 1011 (Vt. 2013). "Malice" is defined "variously as bad motive, ill will, personal spite or hatred, reckless disregard, and the like." *Fly Fish*, 996 A.2d at 1173. Defendant argues that "Plaintiff did not present any evidence at trial to support a finding that Dr. Coates acted with bad

motive, ill will, personal spite, or hatred toward the [P]laintiff."[1] *See* ECF No. 194 at 13. The Court disagrees.

The Vermont Supreme Court has long-recognized malice arising from "acting with a wanton disregard of great harm." *Fly Fish*, 996 A.2d at 1175. In order to constitute malice, the conduct at issue must be more than simply wrong or unlawful. *Id.* at 1177 ("That defendants were in wi[l]lful violation of [the law] or indifferent to plaintiffs' rights, or both, is not determinative of malice."). And conduct evincing a "mere reckless disregard of the plaintiff's rights" or "a reckless disregard of the right of others" is similarly insufficient. *Id.* at 1173-74 (internal quotation marks omitted) (discussing *Brueckner v. Norwich University*, 730 A.2d 1086 (Vt. 1999) and *Bolsta v. Johnson*, 848 A.2d 306 (Vt. 2004)). The Vermont Supreme Court has held:

> the culpability necessary for an award of punitive damages based on reckless or wanton misconduct requires evidence that the defendant acted, or failed to act, in conscious and deliberate disregard of a known, substantial and intolerable risk of harm to the plaintiff, with the knowledge that the acts or omissions were substantially certain to result in the threatened harm.

*Id.* Fraud or deception has also been recognized by the Vermont Supreme Court as sufficient to demonstrate malice. *See, e.g.,*

---

[1] Defendant only argues that "malice"—the second element required for punitive damages—has not been met. Therefore, the Court does not address the first element—whether Defendant's conduct was outrageously reprehensible.

*Ainsworth v. Franklin Cnty. Cheese Corp.*, 592 A.2d 871, 875 (Vt. 1991). Specifically, "[m]isconduct motivated by fraud, associated with traditional notions of *crimen falsi* or moral turpitude or deliberately oppressive trespass are often sustained as grounds for punitive damages . . . ." *Fly Fishing,* 996 A.2d at 1176 n.3 (collecting cases).

In *Ainsworth*, the Vermont Supreme Court held that punitive damages are warranted in contract actions "in certain extraordinary cases where the breach has the character of a willful and wanton or fraudulent tort." 592 A.2d at 874 (alterations omitted) (quoting *Glidden v. Skinner*, 458 A.2d 1142, 1144 (Vt. 1983)); *see also Appropriate Technology Corp. v. Palma*, 508 A.2d 724, 727 (Vt. 1986) (discussing a breach which took "on the character of a willful or fraudulent tort rendering the corporation liable for punitive damages"); *Hilder v. St. Peter*, 478 A.2d 202, 210 (Vt. 1984) ("Although punitive damages are generally not recoverable in actions for breach of contract, there are cases in which the breach is of such a willful and wanton or fraudulent nature as to make appropriate the award of exemplary damages."). In this case, the jury found, and Plaintiff demonstrated, that Dr. Coates misrepresented the nature of the agreement by failing to disclose the use of his own genetic material during the artificial insemination procedure. Plaintiff testified that Dr. Coates never disclosed

that he was intending to use his sperm and, had she known, she would not have consented to the procedure. The jury found that this omission was sufficient to find Dr. Coates liable for fraud and breach of contract.

Moreover, Plaintiff presented sufficient evidence from which a jury could find that Dr. Coates' actions were taken "in conscious and deliberate disregard of a known, substantial and intolerable risk of harm to the plaintiff, with the knowledge that the acts or omissions were substantially certain to result in the threatened harm." *Fly Fish*, 996 A.2d at 1167. Specifically, the jury could have reasonably found that Dr. Coates created a substantial and intolerable risk of harm, because he was aware that because of *his* omission, his patient did not have enough information to legally consent to the artificial insemination procedure. And with the knowledge that Ms. Rousseau was unable to consent to an innately private and personal procedure, came a substantial and intolerable risk of harm. Thus, the Court finds that Plaintiff's evidence was sufficient to find malice and to support instructing the jury on punitive damages.

## B. Whether the Court's Punitive Damages Instruction was Erroneous

Next, the Defendant argues that the Court erred in its instruction on punitive damages. In its jury charge, the Court instructed:

> [y]ou have heard the testimony of Shirley Brown. In
> your assessment of Ms. Rousseau's damages, if any, you
> may only consider Ms. Brown's testimony in your
> deliberations as to whether to award punitive damages.
> You may not consider Ms. Brown's testimony when
> deliberating about the amount of compensatory damages,
> if any, you determine should be awarded to Plaintiff.

ECF NO. 190 at 17-18. Now, Defendant argues that:

> [b]y instructing the jury 'you may only consider Ms.
> Brown's testimony in your deliberations as to whether
> to award punitive damages,' but also instructing the
> jury that it 'may not consider Ms. Brown's testimony
> when deliberating about the *amount* of compensatory
> damages, if any, you determine should be awarded to
> Plaintiff' (emphasis added) without explicitly
> instructing the jury that it must not consider the
> injury to Ms. Brown in calculating the amount of
> punitive damages to be awarded to plaintiff, the Court
> unintentionally furthered the violation of the
> defendant's due process rights by permitting the jury
> to contemplate Ms. Brown's injury without giving the
> defendant every possible opportunity to defend himself
> and leaving the jury to speculate as to the degree and
> character of harm the defendant may have caused non-
> parties.

ECF No. 194 at 24.

There was no error in these instructions. Defendant is
correct that Ms. Brown's testimony cannot be considered in
determining the amount of punitive damages to award, *see Philip
Morris USA v. Williams*, 549 U.S. 346, 346 (2007) (holding that
"[a] punitive damages award based in part on a jury's desire to
punish a defendant for harming nonparties amounts to a taking of
property from the defendant without due process"), but her
testimony can be considered, as the instruction indicated, in

determining *whether* to award punitive damages. See *id*. at 347
(noting that "evidence of actual harm to nonparties can help to
show that the conduct that harmed the plaintiff also posed a
substantial risk to the general public, and so was particularly
reprehensible"). The charge instructed jurors to consider if 1)
the Defendant's conduct was outrageously reprehensible and 2) if
the Defendant acted with malice. It further instructed that
punitive damages are appropriate only for "especially shocking
and offensive misconduct." ECF No. 190 at 22. Therefore, the
fact that Ms. Brown testified that she experienced the exact
same harm as Plaintiff at the hands of Defendant is directly
relevant in the jury's consideration of the reprehensibility of
Defendant's conduct.[2]

Defendant expresses concern that the Court's instruction
directed the jury to not consider Ms. Brown's testimony when
determining the *amount* of compensatory damages, if any, but did
not make this same specification for punitive damages. This
concern is unfounded, as the instruction simply allowed the jury
to consider Ms. Brown's testimony in determining whether to
award punitive damages. It did not direct jurors to consider her

---

[2] Furthermore, Defendant's proposed jury instructions specifically
suggested that the instruction read "[y]ou may only consider SB's
testimony in your deliberations as to whether to award punitive
damages." *See* ECF No. 171 at 7. The Court's instruction that the jury
"only consider Ms. Brown's testimony in your deliberations as to
whether to award punitive damages" is exactly what the Defendant asked
for.

testimony in determining the amount of punitive damages. The fact that the compensatory damages instruction explicitly prohibited the consideration of Ms. Brown's testimony in the determining the amount of damages is neither here nor there.[3]

In any event, Defendant has waived his right to object. Defendant did not object before the jury was charged, nor was the issue raised during the charge conference. Accordingly, this objection is reviewed for plain error. *See Feeley v. City of New York*, 362 F. Supp. 3d 153, 160 (S.D.N.Y. 2019) (internal quotation marks omitted) ("When a party fails either to request a jury instruction or to object to an instruction given, the instruction may be reviewed for plain error 'if the error affects substantial rights.'"). The plain error doctrine "should only be invoked with extreme caution in the civil context." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 18 (2d Cir. 1996) (quoting *United States v. Carson*, 52 F.3d 1173, 1188 (2d Cir. 1995)). "To constitute plain error, a court's action must contravene an established rule of law" and the substantial right

---

[3] What's more, Defendant's proposed instruction similarly directed the jury to not consider Ms. Brown's testimony in its deliberation as to the amount of compensatory damages, without making that same distinction for punitive damages. *See* ECF No. 171 at 7; ECF No. 190 at 18 (comparing Defendant's proposed instruction, "[y]ou may not consider SB's testimony when deliberating about what compensatory damages, if any, you determine should be awarded to the Plaintiffs," with the Court's instruction "[y]ou may not consider Ms. Brown's testimony when deliberating about the amount of compensatory damages, if any, you determine should be awarded to Plaintiff.")

affected must "go[] to the very essence of the case." *Rasanen v. Doe*, 723 F.3d 325, 333 (2d Cir. 2013) (quoting Lavin-*McEleny v. Marist Coll.,* 239 F.3d 476, 483 (2d Cir. 2001) and *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994)). Under plain error review, a new trial is justified only when the jury is deprived of "adequate legal guidance to reach a rational decision." *Callahan v. Wilson*, 863 F.3d 144, 149 (2d Cir. 2017) (internal quotation marks omitted) (quoting *Rasanen*, 723 F.3d at 334–35).

The Court does not see how, and Defendant has not offered any evidence that, the instruction deprived the jury of "adequate legal guidance" or that it "contravene[d] an established rule of law" and therefore is not sufficient to meet the exacting standard for plain error review.

Furthermore, and as discussed above, Defendant proposed the limiting instruction for Ms. Brown's testimony, and the Court's instruction was almost identical to Defendant's proposed instruction. As a result, "[e]ven if this Court's instruction to the jury was erroneous . . . , any error was invited error." *See Feely,* 362 F. Supp. 3d at 159 (citing *United States v. Wells*, 519 U.S. 482, 488 (1997)) ("[A] party may not complain on appeal of errors that he himself invited or provoked the [district] court to . . . commit."); *see also Snyder v. New York State Educ. Dep't*, 486 F. App'x 176, 179 (2d Cir. 2012) ("Given

12

Appellants' failure to make a timely objection when the charge
was given or before the jury was discharged, and the court's
instruction on damages which was substantially similar to
Appellants' proposed instruction, we conclude that the
instruction given did not compromise Appellants' substantial
rights . . . . Any error was certainly not plain error.").

Finally, Defendant's motion for remittitur as to punitive
damages is granted below. While the Court finds no error in its
punitive damages instruction, to the extent that Defendant
believes that the instruction somehow confused or misled the
jury, the reduced punitive damages award gives no weight to, and
thus does not consider, Ms. Brown's testimony.

For the foregoing reasons, the Court concludes that the
jury did not reach a seriously erroneous result or that the
verdict was a miscarriage of justice. *DLC Mgmt.*, 163 F.3d at
133. Thus, Defendant's motion for a new trial based on his
assertion that punitive damages should not have been allowed in
this case, and that the instruction on punitive damages was in
error, is denied.

## II.  Motion for Remittitur

A district court can order remittitur and compel a
plaintiff to choose between a reduction in damages or a new
trial "(1) where the court can identify an error that caused the
jury to include in the verdict a quantifiable amount that should

13

be stricken" and "(2) more generally, where the award is
'intrinsically excessive' in the sense of being greater than the
amount a reasonable jury could have awarded, although the
surplus cannot be ascribed to a particular, quantifiable error."
*Trademark Research Corp. v. Maxwell Online, Inc.* 995 F.2d 326,
337 (2d Cir. 1993) (quoting *Shu-Tao Lin v. McDonnell Douglas
Corp.*, 742 F.2d 45, 49 (2d Cir. 1984)); *see also Tingley Sys.,
Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir. 1995) (citing
*Phelan v. Local 305 of the United Ass'n of Journeymen &
Apprentices of the Plumbing & Pipefitting Indus.*, 973 F.2d 1050,
1064 (2d Cir. 1992)) (holding that under the practice of
remittitur, a trial court "may condition a denial of a motion
for a new trial on the plaintiff's accepting damages in a
reduced amount"). In general, an award may not be set aside
unless it "is so high as to shock the judicial conscience and
constitute a denial of justice." *O'Neill v. Krzeminski*, 839 F.2d
9, 13 (2d Cir. 1988) (internal quotation marks omitted). To
determine if an award "shock[s] the judicial conscience," a
court should look at comparable cases. *See Mathie v. Fries*, 121
F.3d 808, 813 (2d Cir. 1997).

A district court sitting in diversity jurisdiction must
"determine whether the jury's verdict is within the confines set
by state law, and to determine, by reference to federal
standards . . . whether a new trial or remittitur should be

ordered." *Stampf v. Long Island R. Co.*, 761 F.3d 192, 204 (2d Cir. 2014) (quoting *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 435 (1996)). In cases where remittitur is necessary, a court "should reduce the verdict only to the maximum that would be upheld by the trial court as not excessive." *Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1328 (2d Cir. 1990).

### A. Whether Defendant is entitled to remittitur on compensatory damages

The jury awarded Ms. Rousseau $250,000 in compensatory damages, which Defendant argues is excessive. The Second Circuit has established three categories of emotional distress damages: (1) garden variety, (2) significant, and (3) egregious. *See Sooroojballie v. Port Authority of New York & New Jersey*, 816 F. App'x 536, 546 (2d Cir. 2020). Expanding on these categories, The Second Circuit explained:

> [i]n garden-variety claims, the evidence of emotional harm is limited to the plaintiff's testimony, which describes his or her injuries in vague or conclusory terms, and fails to relate the severity or consequences of the injury. These claims typically lack extraordinary circumstances and are not supported by medical testimony. Significant emotional distress claims are based on more substantial harm or offensive conduct and may be supported by medical testimony, evidence of treatment by a healthcare professional, and testimony from other witnesses. Egregious emotional distress claims yield the highest awards and are warranted only where the [defendant's] conduct was outrageous and shocking or affected the physical health of the plaintiff.

*Sooroojballie*, 816 F. App'x at 546 (citing *Maher v. All. Mortg. Banking Corp.*, No. 06-CV-05073 (DRH) (ARL), 2010 WL 3516153, at

*2 (E.D.N.Y. Aug 9, 2010)). A damages award "must be supported by competent evidence concerning the injury." *Patrolmen's Benevolent Ass'n of City of New York v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002) (quoting *Carey v. Piphus*, 435 U.S. 247, 264, n.20 (1978)). "[T]he plaintiff's testimony of emotional injury must be substantiated by other evidence that such an injury occurred, such as the testimony of witnesses to the plaintiff's distress, or the objective circumstances of the violation itself." *Id.*

Based on witness testimony and the evidence established at trial, classifying Ms. Rousseau's damages as "garden variety" does not properly reflect the severity of her injury. As explained in *Sooroojballie*, garden variety emotional distress claims involve scenarios in which a plaintiff "describes his or her injuries in vague or conclusory terms, and fails to relate the severity or consequences of the injury." *Sooroobjallie*, 816 F. App'x at 546. This is not the case here. Ms. Rousseau described the impact of learning about Dr. Coates' actions in explicit detail. She reported anxiety, trouble sleeping, and social withdrawal, among other things. The fact that most evidence of injury came from her testimony is not dispositive. *See Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 601 (S.D.N.Y. 2010) ("[A] court is not required to remit a large non-economic damage award, even where evidence of

emotional damage consists solely of plaintiff's testimony."). Plaintiff's husband's testimony further corroborated her symptoms. *See Miner v. City of Glens Falls*, 999 F.2d 655, 663 (2d Cir. 1993) (upholding a damages award based on a plaintiff's testimony and the testimony of his wife).

Furthermore, the "objective circumstances" of the injury in this case, specifically the reprehensible nature of the conduct, warrants a damages category of significant emotional distress. While Defendant points to the fact that Ms. Rousseau did not seek medical treatment, this is also not dispositive. Evidence that a plaintiff sought medical treatment for his or her alleged injuries is helpful, *see e.g., Carrero v. New York City Hous. Auth*. 890 F.2d 569, 581 (2d Cir. 1989), but it is not required. *Miner*, 999 F.2d at 663. Vermont law directs the Court to "consider the evidence in the light most favorable to the damages found by the jury and uphold the verdict if there was evidence reasonably supporting it." *Winey v. William E. Dailey, Inc.*, 636 A.2d 744, 753 (Vt. 1993) (citation omitted). Considering the evidence in the light most favorable to Ms. Rousseau, the Court concludes that Plaintiff's damages should be considered "significant emotional distress" instead of "garden variety."

Damages that fall within the significant emotional distress category "usually range from $50,000 to $200,000" *Sooroojballie*,

816 F. App'x at 546. The Court is also instructed to look at comparable cases and state law. *See Stampf*, 761 F.3d at 203 (quoting *Gasperini*, 518 U.S. at 435). Given the specific set of facts of this case, there are not directly comparable cases. Upon comparison to Vermont cases with some factual parallels, the Court concludes that the federal standard for significant emotional distress damages, that is from $50,000 to $200,000, is appropriate here. *See Shahi v. Madden*, 949 A.2d 1022, 1033-35 (Vt. 2008) (declining to remit $500,000 in compensatory damages for invasion of privacy); *In re Estate of Peters*, 765 A.2d 468, 477-78 (Vt. 2000) (declining to remit a $125,000 damages award for sexual battery and harmful and offensive bodily contact and holding that it is not possible to place an exact "monetary value on a person's sense of dignity"). Additionally, the Second Circuit has upheld awards of $125,000 for emotional damages in instances "where the evidence of emotional distress consisted only of testimony establishing shock, nightmares, sleeplessness, humiliation, and other subjective distress[.]" *Lore v. City of Syracuse*, 670 F.3d 127, 176-77 (2d Cir. 2012) (internal quotation marks and citations omitted) (collecting cases).

    As noted above, there are no cases that are directly analogous to the facts of this case, and Vermont law directs the Court to "not interfere with an award of damages where exact computation is impossible." *See Lent v. Huntoon*, 470 A.2d 1162,

1172 (Vt. 1983). Nevertheless, given the evidence of Plaintiff's objective injury from the facts of this case, testimony from Mr. and Ms. Rousseau, and the Court's finding that Ms. Rousseau's injuries constitute significant emotional damages, the Court will remit her emotional distress damage award to $200,000—the top of the range for significant emotional distress damages. *See Earl*, 917 F.2d at 1328 (holding that a court "should reduce the verdict only to the maximum that would be upheld by the trial court as not excessive"); *see also Sooroojballie*, 816 F. App'x at 546 (holding that damages that fall within the significant emotional distress category "usually range from $50,000 to $200,000").

Therefore, Defendant's motion for remittitur as to compensatory damages is granted and the Court hereby reduces Plaintiff's compensatory damages from $250,000 to $200,000.

## B. **Whether Defendant is entitled to remittitur on punitive damages**

The jury awarded Ms. Rousseau $5,000,000 in punitive damages, which Defendant argues is excessive. "A punitive damages award will not be upheld where it is so 'grossly excessive' that it arbitrarily deprives the defendant of property." *See Zakre v. Norddeutsche Landesbank Girozentrale*, 344 F. App'x 628, 630 (2d Cir. 2009) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 416-17 (2003)). The Supreme Court has outlined three factors to consider when

19

assessing punitive damages: "(1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* at 409 (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996)). The Vermont Supreme Court has adopted the Supreme Court's framework for reviewing punitive damages awards. *See Shahi*, 949 A.2d at 1033, (holding that "[u]nless grossly excessive, this Court will not interfere with an award of damages" and applying the three guideposts identified by the Supreme Court in *Gore*).

The degree of reprehensibility is considered "the most important indicium of the reasonableness of a punitive damages award." *Gore*, 517 at U.S. 575. When assessing the reprehensibility, a court is to consider whether:

> the harm was physical rather than economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the conduct involved repeated actions or was an isolated incident; and the harm resulted from intentional malice, trickery, or deceit, or mere accident.

*Campbell*, 538 U.S. at 409. Applying the *Campbell* factors, certain factors support upholding Plaintiff's award and others do not. For example, Defendant harmed Plaintiff physically when he performed a medical procedure that she had not agreed to.

20

Likewise, the use of his own genetic material without consent evinces a reckless disregard to the health and safety of others. Furthermore, it is clear from Dr. Coates' testimony that this was an intentional act, not one that was done by "mere accident." On the other hand, Defendant's conduct was limited in time and scope such that the act that caused Plaintiff harm occurred during an isolated incident.

Additionally, the Court is instructed to look at the ratio of punitive to compensatory damages. *See Campbell*, 538 U.S. at 425. Here that ratio is 25:1, which supports a finding that the punitive damages award was excessive. *See id.* (noting that while there is no "bright-line ratio which a punitive damages award cannot exceed . . . . few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process"). While Vermont law does not "impos[e] a ratio requirement," *Pezzano v. Bonneau*, 329 A.2d 659, 661 (Vt. 1974), it considers the ratio between compensatory and punitive damages to be relevant in determining the reasonableness of an award. *See Carpentier*, 86 A.3d at 1014 (considering "to the extent . . . relevant" the ratio between compensatory and punitive damages as to comport with due process). Looking critically at the ratio between compensatory and punitive damages is especially important when the compensatory damages award is, as it is here, "imprecise because

21

of the nature of the injury." *See Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 165 (2d Cir. 2014); *see also* Cass R. Sunstein, Daniel Kahneman & David Schkade, *Assessing Punitive Damages (with Notes on Cognition and Valuation in Law),* 107 Yale L.J. 2071, 2131-33, 2135 (1998) (explaining that emotional distress awards are often arbitrary and unpredictable due to the inherent uncertainty in converting "underlying moral judgments into dollar amounts").

Plaintiff cites two cases in which the Vermont Supreme Court upheld a ratio of greater than single digits. *See* ECF No. 200 at 18 (citing *Pezzano*, 133 Vt. at 92; *Sweet*, 173 Vt. at 446). In *Sweet*, that court upheld a ratio of 10:1. *See Sweet v. Roy*, 801 A.2d 694, 714-15 (Vt. 2002). It is notable, however, that in that case, the compensatory damages award was $10,000, much lower than the compensatory damages awarded here. In *Pezzano*, that court upheld a ratio of 25:1, but also notably, the compensatory damages award in that case was only $300. In sum, Plaintiff only cites one case in which the Vermont Supreme Court upheld a ratio greater than 20:1, and of the two cited cases with ratios greater than single digits, both had very small compensatory damages. In *Cole v. Foxmar*, this Court explained that "the Vermont Supreme Court has upheld ratios greater than a single digit, [where] the compensatory damages have been relatively small and the conduct 'particularly

22

egregious.'" *Cole v. Foxmar, Inc.*, No. 2:18-CV-00220, 2022 WL 842881, at *17 (D. Vt. Mar. 22, 2022) (citing *Campbell*, 538 U.S. at 425). This is not the case here. While the Court acknowledges that Defendant's conduct was indeed egregious, the compensatory damages award in this case is not small as compared to both *Sweet* and *Pezzano*.

Another factor the Court would normally consider is "the difference between punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Campbell*, 538 U.S. at 418. However, as reflected in the Court's discussion of compensatory damages, there are very few comparable cases to guide the Court's assessment of damages.

The Court seeks to strike a balance between recognizing the reprehensible nature of Defendant's conduct, effectuating the purpose of punitive damages, and considering the factors named above, while adhering to federal and state limits to punitive damages awards. Given that the Supreme Court has held that double digit ratios raise due process concerns, and that Plaintiff points to just two instances where the Vermont Supreme Court upheld awards with double digit punitive damage awards, the Court finds that a punitive damages award of 25:1 is impermissibly high. *See Shahi*, 949 A.2d at 1022 (quoting *Gore*, 517 U.S. at 574) ("Punitive-damage awards are subject to constitutional scrutiny because due process demands that a

23

person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose."). The Court further finds that a 10:1 ratio, thereby bringing the punitive damages award to $2,000,000, is the "outer limit" of what would be permissible when considering all the relevant factors.

### III. Conclusion

For the foregoing reasons, Defendant's motion for a new trial is DENIED, conditional upon Plaintiff's acceptance of remitted damages, and Defendant's motion for remittitur is GRANTED. The Court hereby ORDERS that Plaintiff's compensatory damages be reduced to $200,000 and punitive damages be reduced to $2,000,000 or that a new trial on damages be ordered.

DATED at Burlington, in the District of Vermont, this 30th day of August, 2022.


                                    /s/ William K. Sessions III
                                    William K. Sessions III
                                    U.S. District Court Judge